(Not for Publication)                                    (Docket Entry No. 18 )

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| LAWRENCE D. PALATNIK, | : | |
| Plaintiff, | : | Civil No. 04-1229 (RBK) |
| v. | : | **OPINION** |
| THE HOME DEPOT, INC., | : | |
| Defendant. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon motion by Defendant The Home Depot, Inc.

("Home Depot") for summary judgment on the claims in Plaintiff Lawrence Palatnik's

Complaint.  In the Complaint, Palatnik seeks compensatory and punitive damages for alleged

violations of state common law and the New Jersey Law Against Discrimination ("LAD"), N.J.

Stat. Ann. § 10:5-1 et seq.  For the reasons that follow, the Court will grant Home Depot's

motion.

## I. BACKGROUND

Plaintiff Lawrence Palatnik is a 46-year-old male presently employed by Home Depot as

an Assistant Store Manager in the Home Depot store located in Ridley Park, Pennsylvania.[1]

---

[1]This factual background is based on Home Depot's statement of facts.  Because Palatnik failed to submit a proper statement of facts in accordance with the relevant procedural rules, he has admitted any undisputed facts for purposes of summary judgment. See L. Civ. R. 56.1;

Home Depot is in the business of selling building materials and home improvement products at various store locations nationwide.

Palatnik first applied for employment with Home Depot on or about October 31, 1992, and he was subsequently hired as an Assistant Store Manager Trainee in June 1993. When he began his employment at Home Depot, Palatnik received Home Depot's Employee Handbook, which sets forth anti-discrimination and open door policies by which employees may report complaints or problems. Palatnik also participated in an Orientation Program during which Home Depot explained and reviewed the open door, harassment and equal employment policies. In addition, Palatnik became familiar with Home Depot's "Respect for All People" policy.[2]

After attending the Orientation Program, Palatnik began working as an Assistant Store Manager in the Home Depot store located in Milltown, New Jersey. Sometime in 1998, Palatnik changed store locations and began working in the Home Depot in Wallkill, New York. In June of 1998, Palatnik then transferred to Home Depot's store in West Nyack, New York to work again as an Assistant Store Manager. Beginning with his first Home Depot position in 1993, Palatnik spent approximately eight years working in managerial positions for the Defendant.

**A. Plaintiff's Transfer to Cherry Hill and Self-Imposed Work Restrictions**

However, on March 5, 2001, Palatnik voluntarily stepped down from the salaried Assistant Store Manager position at the West Nyack Home Depot store to become a Customer

---

Hutchinson v. Bennigan's/Metromedia Restaurant, Inc., No. 02-5364, 2006 WL 477003, at *2 (D.N.J. Feb. 28, 2006); see also Hernandez v. City of Union City, No. 04-1935, 2006 WL 490054, at *5 (D.N.J. Feb. 28, 2006) (treating defendant's statement of facts as undisputed where plaintiff's statement of facts merely contained conclusory allegations unsupported by any evidence).

[2]Palatnik deposed that he subsequently taught classes to other employees on the "Respect for All People" policy. (Pl. Dep. at 276:20 to 276:25.)

Service Manager at the Home Depot store located in Cherry Hill, New Jersey.  Although the Customer Service Manager job was a demotion to an "hourly department supervisor" position, Palatnik voluntarily requested the transfer because he wanted to move to Cherry Hill for personal reasons. (See Pl. Dep. at 65:22 to 66:12.)

Specifically, Palatnik needed a job within 30-miles from his new home in Cherry Hill. (See Pl. Dep. at 67:22 to 68:10.)  At the time Palatnik requested the move, he was advised that there were no Assistant Store Manager positions then available in Cherry Hill.  Furthermore, because he was relocating to a new district, there were other individuals already working in the Cherry Hill store who would be ahead of Palatnik in terms of opportunities for promotion. Plaintiff deposed that, due to his voluntary demotion and transfer, he did not reasonably expect to be considered for promotion to Assistant Store Manager until one year after his arrival at the Cherry Hill Store. (See Pl. Dep. at 67:4 to 67:9, 474:2 to 474:4.)

Nevertheless, prior to his move to Cherry Hill, Palatnik had been advised of an Assistant Manager position available in May 2001 in a nearby Pennsylvania store.  Palatnik did not pursue that position either before or after beginning work in the Cherry Hill store.  However, at the time he transferred to Cherry Hill, Palatnik submitted a Job Preference Processing ("JPP") application which allegedly stated that Palatnik sought and was qualified for an Assistant Store Manager position. (See Pl. Mem. at 4.)[3]

After Palatnik transferred to Cherry Hill, he then requested and received certain limitations on his work schedule.  In September 2002, Palatnik told the Cherry Hill Store Manager, Nicole Lomba, that he had an agreement with the prior store manager, Dave McFadden, which provided that Palatnik would not work weekends so that he could spend more

_____

[3]Palatnik has not provided a copy of this JPP application.

time with his family. (See Pl. Dep. at 225:2 to 226:14.)  Palatnik wanted Lomba to memorialize a similar arrangement.  To accommodate Palatnik's request to work a restricted schedule, Lomba then entered into a 90-day "contract" with Palatnik for the period October 2002 to January 2003. The agreement provided in pertinent part that "[m]anagement has agreed to accommodate my schedule needs. My schedule is attached for the period of this contract. Changes can be made to this schedule at my request as well as management's request as long as I [Palatnik] can personally make the change." (Work Schedule Agreement attached to Brady Cert. at Exhibit L.) The schedule attached to the "contract" shows that from October 2002 to January 2003 Palatnik worked roughly 45 hours per week and generally had at least two days off each week. (See Work Schedule Agreement attached to Brady Cert. at Exhibit L.)

Palatnik made an additional request for modified work hours for the time period of April 2004 through June 2004.  At that time, Palatnik asked his supervisor, John Vasquez, not to schedule him to work at times when Palatnik's son had baseball games. (See Pl. Dep. at 229:15 to 230:16.)  Vasquez granted those requests "as best he could." (Performance Tracking Form attached to Brady Cert. at Exhibit O.)  In addition, during that same time period, Palatnik received scheduling accommodations on 20-30 occasions because his wife was in the process of becoming a U.S. citizen. (Pl. Dep. at 230:10 to 230:16.)

**B. Plaintiff's Positions and Performance Reviews in Cherry Hill**

Despite the self-imposed restrictions on his schedule, Palatnik held several different positions at the Home Depot store in Cherry Hill between March 5, 2001 and November 1, 2004. After beginning employment in Cherry Hill as a Customer Service Manager, he then transferred to the Electrical Department as a Department Supervisor on March 19, 2001.  A few months later, on May 8, 2001, Palatnik became the Night Crew Supervisor.  From October 2002 until

June 2003, plaintiff worked as the Department Supervisor of the Hardware Department. After that, he transferred to the Paint Department as a Department Supervisor.

During his tenure at the Cherry Hill store, Palatnik received numerous performance evaluations.  In August 2001, Palatnik received an evaluation as a Night Shift Supervisor, wherein he received an overall rating of "4" on a scale of 1-5.  Similarly, in his February 2002 review, Palatnik also received an overall rating of "4" on the same scale.  In his next review on September 4, 2002, Palatnik received an overall score of "B" (Achiever) on a scale of "A" (Outstanding) to "D" (Improvement Required).

Palatnik was dissatisfied, however, with the results of the next two performance reviews dated January 30, 2003 and August 7, 2003.  After Palatnik transferred to the Hardware Department, he received the January 30, 2003 evaluation from Assistant Store Manger Arnold Hatton.  In that evaluation, Palatnik received an overall rating of "C" on the same "A" to "D" scale used for his September 4, 2002 evaluation. (Performance Review attached to Brady Cert. at Exhibit V.)  A few months later, on August 7, 2003, Assistant Store Manager Charles Lydamore reviewed Palatnik and gave him an overall score of "P" (Performer) on the following scale: "O" (Outstanding), "V" (Achiever), "P" (Performer), "I" (Improvement). (Performance Review attached to Brady Cert. at Exhibit W.)  Palatnik objected to both the January 2003 and August 2003 reviews as being unrepresentative of his efforts. (See Associate Comments in Performance Reviews, attached to Brady Cert. at Exhibits V, W.)

However, in his next evaluation in January 2004, Palatnik received a better review rating of "V" (Achiever) by Assistant Store Manager Dave Borganni.  In the space for Palatnik's comments on the review form, Palatnik indicated that he "greatly appreciated the review." (Associate Comments in Performance Review attached to Brady Cert. at Exhibit X.)  A few

months later, in November 2004, Palatnik was promoted to Assistant Store Manager at the Ridley Park store in Pennsylvania.

### C.  Plaintiff's Prior Attempts at Promotion in Cherry Hill

Prior to Palatnik's promotion and transfer to Assistant Store Manager in Ridley Park in November 2004, Palatnik had interviewed for two promotions in Cherry Hill.  First, in January 2002, the District Manager, Michael Markmann, interviewed Palatnik for the position of Night Operations Assistant Store Manager.  The Home Depot Employment Handbook provides that to be considered for an Assistant Store Manager position, an employee must (1) be 18 years of age or older, (2) pass the drug test, (3) work a flexible, minimum 55 hour schedule, and (4) receive a satisfactory performance on the most recent review as a department supervisor. (Handbook attached to Markmann Cert. at Exhibit A.)  Plaintiff testified that he was not promoted to the position, but rather, that Arnold Hatton received the job. (Pl. Dep. at 83:8 to 83:12.)  At the time of the promotion, Hatton was 40 years old.  Palatnik deposed that Hatton's promotion is not evidence of discrimination against him. (Pl. Dep. at 337:24 to 338:5.)

Second, at around the same time in January 2002, Palatnik applied and interviewed for the position of Store-level Human Resources Manager.  To become a Store-level Human Resources Manager, a candidate must complete a two step process involving (1) an oral interview with two separate salaried managers, and (2) a written test, referred to as an "in-basket." (Def. Facts ¶ 61.)  This process was designed to evaluate the candidate's ability to identify potential human resources issues arising under federal employment and labor laws.  On both the interview and in-basket, the candidates received a rating of 1 to 5, with 5 being the highest.  Those scores were then translated into ratings of "favorable," "acceptable," and "unfavorable."  Candidates receiving the bottom three ratings of (1) acceptable

interview/unfavorable in-basket, (2) unfavorable interview/acceptable in-basket, or (3) unfavorable interview/unfavorable in-basket were automatically rejected for the position. Palatnik received a rating of "acceptable interview/unfavorable in-basket," and thus, he did not receive the promotion. (Perez Cert. ¶¶ 8, 9.)  Although Palatnik was not selected for the promotion, he has not identified any other individual who received the position instead of him. (See Pl. Dep. at 88:1 to 88:24.)

### D. Plaintiff's Complaints

On October 15, 2002, Palatnik filed a Complaint with New Jersey's Division of Civil Rights ("DCR") alleging a claim of age discrimination against Home Depot pursuant to the LAD.  In particular, the DCR Complaint avers that Home Depot violated the LAD when it failed to promote Palatnik in August 2002 to the available positions of Assistant Store Manager and Night Operations Manager. (See DCR Complaint attached to Brady Cert. at Exhibit C.)  On December 29, 2003, Palatnik withdrew the Complaint with the DCR because he planned to "file a claim in NJ Superior Court through [his] attorney." (Withdrawal Notice attached to Brady Cert. at Exhibit D.)

Shortly thereafter, on January 2, 2004, Palatnik initiated the current action against Home Depot by filing a Complaint in the Superior Court of New Jersey, Law Division, Camden County.  On March 10, 2004, Home Depot then removed the case to this Court on the basis of diversity jurisdiction.  In the Complaint, Palatnik alleges that Home Depot violated the LAD by not promoting Palatnik because of his age and gender.  The failure to promote claims not only relate to the Assistant Store Manager (hereinafter "ASM") and Store Human Resources Manager (hereinafter "Store HRM") positions that Palatnik interviewed for in January 2002, but also to dozens of other promotions to ASM and Store HRM positions that occurred from March 5, 2001

to November 1, 2004. (See Def. Facts ¶ 85.)  In addition to the discrimination claims, the

Complaint also states that Home Depot unlawfully retaliated against Palatnik, in violation of the

LAD and state common law, after Palatnik filed his complaint with the DCR.

Home Depot now moves for summary judgment on all the claims in Palatnik's

Complaint.  For the reasons set forth below, this Court will grant Home Depot's motion.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue

of material fact exists when "the evidence is such that a reasonable jury could find for the

nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving

for summary judgment. Celotex, 477 U.S. at 330.  The moving party may satisfy this burden by

either (1) submitting affirmative evidence that negates an essential element of the nonmoving

party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is

insufficient to establish an essential element of the nonmoving party's case. Id. at 331.  If the

moving party has not fully discharged its initial burden, its motion for summary judgment must

be denied.  Id. at 332. If the moving party satisfies its initial burden, the nonmoving party "must

set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## III.  DISCUSSION

In its motion for summary judgment, Home Depot argues that it is entitled to summary

judgment in its favor for several reasons.  First, with respect to Palatnik's age and gender

discrimination claims under the LAD, Home Depot argues that (1) many of the promotions that

Palatnik contends he was entitled to are factually incorrect or irrelevant; (2) many of the promotions at issue are time-barred by the statute of limitations; and (3) for the remaining promotions at issue, Palatnik has failed to establish the substantive elements of a valid discrimination claim under the LAD.  Second, with respect to Palatnik's retaliation claim under the LAD, Home Depot contends that Palatnik has failed to establish any adverse employment action or any causal connection between his filing of the DCR Complaint and the allegedly retaliatory conduct.  Third, Home Depot asserts that Palatnik's common law claim for retaliation is preempted by the LAD, and therefore, must be denied.  Finally, Home Depot argues that Palatnik's claim for punitive damages is inappropriate because he has failed to establish any liability, much less the "wantonly reckless or malicious" conduct necessary to justify a punitive damages award.  The Court will address each argument in turn.

### A.  Incorrect or Irrelevant Promotions to ASM Forming Basis of Plaintiff's Discrimination Claims

During discovery, Palatnik provided the names of 34 individuals who were promoted to management positions that Palatnik believes he was entitled to during his tenure at the Cherry Hill store (i.e. from March 2001 to November 2004).[4]  Palatnik alleges that even though he was equally or more qualified than these individuals for the promotions they received, he did not obtain the promotions because of his age and gender.

Nevertheless, Home Depot points out in its brief that 7 of these 34 individuals are not at

---

[4] The 34 individuals are: Robert Rosner, Bonnie Brewer, Andrew Shaw, Drew Travia, Keith McCrary, Danielle Bordi, Dave McFadden, Ray Murphy, Salvatore Liberto, Brian Askin, Arnell Palmer, Tom Gray, Andy Collins, Dan Fisher, Joe Centanni, Frances Stevenson, Arnold Hatton, John Watson, Nicole Lomba, John Vasquez, Robert Streahle, Mike Cannon, Christian Cardelfe, Steve Leek, Bill Testowski, Keith Knight, Dan Hallock, Michael O'Connor, Robert Boehm, Roy Currie, Robert Edginton, Robert Blum, William Thurman, and Patrick Caprarola. (See Def. Mem. at 6; Def. Facts ¶ 85.)

issue here because their promotions are either immaterial or factually incorrect.  First, the

promotions of Dave McFadden, Christopher Cardelfe, Joesph Centanni, Nicole Lomba, and

Steve Leek are irrelevant to Palatnik's claims because those individuals were promoted to the

position of Store Manager, whereas Palatnik contends that his current claims for failure to

promote relate to *Assistant* Store Manager positions. (See Pl. Dep. at 237:22 to 237:24.)

Moreover, Palatnik was not eligible for those five Store Manager positions because when the

promotions occurred, Palatnik did not hold a position as an ASM. (See Store Manager

Qualifications in Employee Handbook, attached to Markmann Cert. at Exhibit A.)  Second,

although Palatnik listed Bill Testowski as one of the 34 promoted individuals, Palatnik concedes

that he does not know anyone by that name and Home Depot has likewise been unable to identify

any employee with that name. (See Def. Facts ¶ 86.)  Finally, as to Patrick Caprarola, the records

of Home Depot indicate that Mr. Caprarola was never assigned the position of ASM.  (See Silk

Cert. ¶ 10.)  Because it is uncontested that these 7 individuals did not receive promotions to

ASM during Palatnik's tenure at the Cherry Hill store, the Court will not consider them here as

alleged instances of discrimination against the plaintiff.  That leaves 27 individuals whom

Palatnik contends were improperly promoted to ASM instead of him.

### B. Statute of Limitations and Palatnik's Discrimination Claims

The statute of limitations for a discrimination claim brought under the LAD is two years.

Mancini v. Twp. of Teaneck, 846 A.2d 596, 599 (N.J. 2004) (citing Montells v. Haynes, 627

A.2d 654 (N.J. 1993)).  In employment discrimination suits, the statute of limitations typically

begins to run when the cause of action accrues, or put another way, at "the time of the

discriminatory act." Miller v. Beneficial Mgmt. Corp., 977 F.2d 834, 842 (3d Cir. 1992) (quoting

Chardon v. Fernandez, 454 U.S. 6, 8 (1981)).  However, if the alleged discriminatory act

constitutes part of a "continuing violation," then the statute of limitations begins to run at the

time of the last occurrence of discrimination, rather than the first. Id. (citation omitted).

In New Jersey, to establish a "continuing violation" based on a series of discriminatory

acts, a plaintiff must demonstrate that (1) at least one of the allegedly discriminatory acts

occurred within the filing period, and (2) the discrimination is part of a pattern of discrimination

and is not merely "the occurrence of isolated or sporadic acts of intentional discrimination."

Bolinger v. Bell Atlantic, 749 A.2d 857, 860-61 (N.J. Super. Ct. App. Div. 2000) (citations

omitted).  That is, the law draws a distinction between discrete acts of discrimination such as

"terminations, failure to promote, and refusals to hire, which are separate actionable wrongs" and

a hostile work environment claim, which involves "repeated conduct that has a cumulative

discriminatory effect over a period of time." Alliance for Disabled in Action, Inc. v. Renaissance

Enter., Inc., 853 A.2d 334, 340 (N.J. Super. Ct. App. Div. 2004) (quoting Shepherd v. Hunterdon

Developmental Center, 803 A.2d 611, 622-24 (N.J. 2002)).  With this distinction in mind, New

Jersey state and federal courts have consistently noted that the continuing violations theory does

not apply to a discrimination claim based upon lost promotions. See e.g., Rush v. Scott Specialty

Gases, Inc., 113 F.3d 476, 483-84 (3d Cir. 1997) (finding that the plaintiff's failure to promote

claim "addresses discrete instances of alleged discrimination that are not susceptible to a

continuing violations analysis"); Harel v. Rutgers, 5 F. Supp. 2d 246, 262 (D.N.J. 1998) (noting

that two distinct decisions against promotion are discrete acts not subject to continuing violations

doctrine); Bolinger, 749 A.2d at 861-62 (noting that discrete acts like termination or denial of a

promotion trigger an employee's duty to take legal action to recoup rights); but see Miller, 977

F.2d at 835, 844 (allowing for application of the continuing violations theory for repeated

failures to promote where the potential for promotion was *not* based upon specific job

vacancies).[5]

Here, Home Depot points out that 15 of the 27 aforementioned individuals who were promoted to ASM positions were promoted more than two years before Palatnik filed his complaint on January 2, 2004. Specifically, Home Depot provided the following list of 15 individuals and their dates of promotion: (1) Andy Shaw (July 2, 2001), (2) Ray Murphy (June 30, 1997), (3) Salvatore Liberto (June 24, 1996), (4) Brian Askin (February 1, 2000), (5) Tom Gray (March 15, 1999), (6) Dan Fisher (December 15, 1997), (7) John Vasquez (July 2, 2001), (8) Mike Cannon (March 13, 2000), (9) Keith Knight (October 8, 1999), (10) Dan Hallock (August 6, 2001), (11) Michael O'Connor (December 20, 1999), (12) Robert Boehm (March 16, 1998), (13) Roy Currie (September 18, 2000), (14) Robert Edginton (1995), and (15) Robert Blum (May 10, 1999). (Def. Mem. at 8.)

Because these 15 individuals were promoted prior to January 2, 2002, Home Depot argues that Palatnik's claims for discrimination based upon those lost promotions should be barred by the applicable statute of limitations, as each promotion is a discrete act not subject to the continuing violations doctrine. Moreover, plaintiff's sworn interrogatory answers inexplicably identified these 15 individuals in support of his claim against Home Depot's allegedly discriminatory promotion practices, even though many of these promotions occurred when Palatnik was actually working as an ASM in Home Depot's New York market between March 1996 and March 2001. (See Def. Facts ¶ 23.) In other words, not only are these promotions time-barred as instances of discrimination, but many of them also cannot be evidence

---

[5] The positions Palatnik sought were apparently only available due to specific job vacancies, as plaintiff's deposition testimony suggests that he had to wait for an ASM position to open up before promotion was possible. (See Pl. Dep. at 69:2 to 69:9.) In other words, there had to be an opening for the positions he sought before he could obtain them. Therefore, Miller is distinguishable.

of a failure to promote Palatnik because when several of these promotions occurred, Palatnik was already working as an ASM for the defendant.

In his opposition papers, Palatnik does not even mention Home Depot's statute of limitations argument, much less provide any specific facts demonstrating that there is a genuine, disputed issue regarding application of the statute of limitations to any of the 15 promotions listed above. Therefore, because there is no reason to believe that these 15 lost promotions are subject to the continuing violations doctrine under New Jersey law, the Court will grant summary judgment in favor of Home Depot on the basis that the claims are time-barred by the two-year statute of limitations under the LAD.

The remaining 12 individuals Palatnik identifies as improperly receiving promotions to ASM all obtained their promotions after January 2, 2002. These individuals include: Arnold Hatton, Bonnie Brewer, Keith McCrary, Robert Rosner, John Watson, Drew Travia, Frances Stevenson, Andrew Collins, Arnell Palmer, Robert Streahle, Danielle Bordi, and William Thurman. However, as mentioned above, Palatnik deposed that Arnold Hatton's promotion to ASM at age 40 was not evidence of discrimination against him. (See Pl. Dep. at 338:2 to 338:5.) As a result, only 11 promotions to ASM remain as the basis of Palatnik's age and gender discrimination claims under the LAD.

### C.  Substantive Elements of Palatnik's Gender and Age Discrimination Claims

Home Depot argues in the current motion that summary judgment should be awarded in its favor on Palatnik's age and gender discrimination claims as to the 11 remaining promotions to ASM and the disputed promotions to Store HRM. Specifically, Home Depot alleges that Palatnik has not established a prima facie case of age or gender discrimination. Alternatively, with respect to the age discrimination claim, Home Depot contends that even if Palatnik has

made out a prima facie case, he is unable to show that Home Depot's articulated reasons for not promoting him are a mere pretense for discrimination.

Where, as here, the plaintiff does not present direct evidence of discrimination under the LAD, New Jersey courts apply the three-step, burden-shifting standard for Title VII and ADEA claims outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Bergen Commercial Bank v. Sisler, 723 A.2d 944, 955 (N.J. 1999). Under this burden-shifting framework, a plaintiff must first establish a prima facie case of discrimination. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (citing St. Mary's Center v. Hicks, 509 U.S. 502, 506 (1993)). A rebuttable presumption of unlawful discrimination arises if plaintiff presents this prima facie case. Sisler, 732 A.2d at 955 (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Then, to rebut this presumption, the defendant employer must set forth admissible evidence of a legitimate, non-discriminatory reason for the employment decision at issue. Id.; Reeves, 530 U.S. at 142. Next, if the defendant produces evidence of a legitimate, non-discriminatory reason, the presumption of unlawfulness disappears. Sisler, 732 A.2d at 955 (citing St. Mary's Center, 509 U.S. at 507-08.) At that point, the plaintiff must prove by a preponderance of the evidence that the employer's articulated reason was not the real reason for the employment action, but rather was a mere pretext for discrimination. Id. The plaintiff may prove pretext directly by demonstrating that a different reason more likely motivated the employer, or indirectly by demonstrating that the employer's articulated reason is not credible. Id.; Reeves, 530 U.S. at 143. In spite of these intermediate burden shifts within the discrimination standard, it is ultimately the plaintiff's burden to persuade the fact finder that the employer engaged in unlawful discrimination. Reeves, 530 U.S. at 143; Burdine, 450 U.S. at 253; Sisler, 732 A.2d at 955.

Generally, to satisfy the first prong of the <u>McDonnell Douglas</u> test in a failure to promote case, the plaintiff must establish a prima facie case of discrimination by showing (1) he is a member of a class protected by anti-discrimination laws; (2) he was qualified for the position or rank; (3) he was denied promotion, reappointment, or tenure; and (4) others with similar or lesser qualifications achieved that rank or position. <u>Greenberg v. Camden County Vocational & Tech.</u> <u>Schools</u>, 708 A.2d 460, 465 (N.J. Super. Ct. App. Div. 1998) (citing <u>Dixon v. Rutgers</u>, 541 A.2d 1046 (N.J. 1988)); <u>see</u> <u>Sisler</u>, 732 A.2d at 955.

### 1.  Gender Discrimination Claim

However, where the plaintiff alleges a reverse gender discrimination claim, the plaintiff has a modified burden under the first prong of the <u>McDonnell Douglas</u> test to show "background circumstances supporting the suspicion that defendant is the unusual employer who discriminates against the majority." <u>Erickson v. Marsh & McLennan Co., Inc.</u>, 569 A.2d 793, 799 (N.J. 1990) (quoting <u>Livingston v. Roadway Express</u>, 802 F.2d 1250, 1252 (10th Cir. 1986) (other citations omitted)). The burden is modified because "the presumption of discrimination arising solely from plaintiff's membership in a historically disfavored group is not necessarily justified when the plaintiff is a member of the majority." <u>Sisler</u>, 723 A.2d at 957 (citations omitted).  To show background circumstances sufficient to warrant an inference of discrimination, an employee can either (1) establish that he was better qualified for the position than the minority candidate selected, or (2) establish that the employer had some "reason or inclination to discriminate against the majority class." <u>Id.</u> (citing <u>Murphy v. Milwaukee Area Technical Coll.</u>, 976 F. Supp. 1212, 1217 (E.D. Wis. 1997)).

In addition, New Jersey courts have suggested that to satisfy the fourth prong of the <u>McDonnell Douglas</u> test for a reverse gender discrimination claim, the plaintiff is required to

show that similarly situated persons of the opposite sex received the position or rank that the plaintiff was denied. Erickson, 569 A.2d at 801 (in reverse gender discrimination case for discriminatory discharge, male plaintiff failed to establish prima facie case because he failed to show that the employer sought to replace him with a woman);[6] see Peper v. Princeton Univ. Bd. of Trustees, 389 A.2d 465, 480 (N.J. 1978) (in failure to promote case, female plaintiff's "burden of demonstrating a prima facie case required her to show that similarly situated males were promoted while she was not").

Home Depot argues that Palatnik cannot sustain a reverse gender discrimination claim because he has not put forth evidence demonstrating that Home Depot is the "unusual employer" who discriminates against males in favor of females. Of the remaining 11 ASM promotions at issue, only three of them were filled by female employees. (Def. Mem. at 15.) In light of the fact that Home Depot promoted these three women to ASM positions at a time when it also promoted nearly four times as many men to the same position, Palatnik fails to present any evidence to show that Home Depot engaged in a pattern of gender discrimination that favored women over men for the ASM position. In fact, of the original 34 individuals Palatnik identified during discovery as receiving promotions to management positions, 24 of those individuals are male. (See Def. Mem. at 8-9, 15.) Moreover, Michael Markmann, the District Manager responsible for choosing not to promote Palatnik to an ASM position, is a male employee. Courts have been reluctant to infer reverse discrimination where the decision maker is the same gender, or in the

---

[6] In Erickson, the New Jersey Supreme Court also found that under the fourth prong of a prima facie case of reverse gender discrimination, a plaintiff did not have to show that a person with similar or lesser qualifications received the position at issue. 569 A.2d at 800-801. At this point, the Court does not need to analyze how the fourth prong applies to the present reverse gender discrimination claim because Palatnik has failed to establish under the first prong that Home Depot was the unusual employer who discriminated against the majority.

same class, as the plaintiff.  See Murphy v. Housing Auth. & Urban Redevelopment Agency, 32

F. Supp. 2d 753, 765-66 (D.N.J. 1999); see also Ditzel v. Univ. of Med. & Dentistry of New

Jersey, 962 F. Supp. 595, 604 (D.N.J. 1997) ("this Court . . . is skeptical that plaintiff, a white

male, can establish that he suffered reverse race discrimination at the hands of his white

supervisor").  Based on this lack of evidence to support Palatnik's prima facie case of reverse

gender discrimination as to the ASM promotions, Home Depot seeks summary judgment on

those claims.

Likewise, with respect to the 33 individuals Home Depot selected for Store HRM

positions during Palatnik's tenure in Cherry Hill, 18 of those promoted individuals are men.

(Def. Facts ¶ 66.)  As mentioned above, during discovery Palatnik did not identify a single

female employee who received a promotion to Store HRM that he claims he should have

received. See Peper, 389 A.2d at 480 (noting that prima facie case of gender discrimination

requires proof that similarly situated person of opposite sex received promotion that plaintiff

lost); see also Erickson, 569 A.2d at 801 (finding that male plaintiff failed to establish prima

facie case because he failed to show that the employer sought to replace him with a woman).

Given these facts and Palatnik's failure to produce any evidence whatsoever that Home Depot

discriminates in favor of women with respect Store HRM promotions, Home Depot also seeks

summary judgment on the gender discrimination claim pertaining to the failure to promote

Palatnik to Store HRM.

Palatnik's opposition papers do not address the heightened burden required to show a

prima facie case of reverse gender discrimination.  Plaintiff's brief merely states that he has met

his "prima facie burden of proof" because (1) he was in his mid-forties at the time of the alleged

promotions; (2) he was qualified for the ASM position because he told Home Depot in his March

2001 JPP application he was willing to meet the requirements of an ASM position; and (3) he met the eligibility requirements for the ASM position set forth in Employment Handbook. ( Pl. Mem. at 4.)  None of these blanket assertions has anything to do with establishing that Home Depot is the "unusual employer" who discriminates against men in favor of women.  In the absence of any evidence tending to show that Home Depot discriminated against male employees in any way, much less in its promotion practices to ASM or Store HRM positions, this Court finds that Palatnik has failed to meet his burden of showing a prima facie case of reverse gender discrimination under the LAD.  Therefore, the Court will grant summary judgment in favor of Home Depot on all of Palatnik's gender discrimination claims.

2.  Age Discrimination Claims

To state a traditional age discrimination claim for failure to promote, a plaintiff must show by a preponderance of the evidence that (1) he is member of a protected class; (2) he applied for and was qualified for the position sought; (3) he was denied the position, and (4) others with similar or lesser qualifications received the position. Greenberg, 708 A.2d at 465; Esposito v. Twp. of Edison, 703 A.2d 674, 679 (N.J. Super. Ct. App. Div. 1997); see Sisler, 723 A.2d at 955.

Under the second prong of the analysis, a dispute over qualifications may satisfy plaintiff's prima facie hurdle of establishing his qualifications as long as the plaintiff demonstrates that he was "sufficiently qualified to be among those persons from whom a selection, to some extent discretionary, would be made." Bennun v. Rutgers State University, 941 F.2d 154, 171 (3d Cir. 1991) (citing Roebuck v. Drexel University, 852 F.2d 715, 726 (3d Cir. 1988) (internal citations omitted)).

Moreover, to satisfy the fourth prong of the analysis in a failure to promote case, the court

may require a showing that "similarly situated" employees were promoted when plaintiff was not. Peper, 389 A.2d at 480; see Jason v. Showboat Hotel & Casino, 747 A.2d 802, 807 (N.J. Super Ct. App. Div. 2000). "Similarly situated" generally refers to persons possessing equivalent qualifications and working in the same job category as plaintiff. Peper, 389 A.2d at 480. In turn, the "same job category" means that those individuals who were allegedly promoted over plaintiff must have been in the same "promotional stream" with similar responsibilities. Id. However, the Peper court cautioned that there is no exhaustive list of criteria governing the "similarly situated" inquiry. Id. Rather, to determine whether similarly situated individuals were treated more favorably than the plaintiff, the court must focus on "the particular criterion or qualifications" identified by the employer as the reason behind the employment decision. Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 647 (3d Cir. 1998).

Additionally, Home Depot argues that to satisfy the fourth prong of a prima facie case of age discrimination, the plaintiff must also show that the individuals promoted instead of Palatnik were "sufficiently younger than" Palatnik. (Def. Mem. at 16.) In Sisler, the New Jersey Supreme Court noted that "under the LAD, which specifies no qualifying age, courts have modified the fourth element to require a showing that the plaintiff was replaced with a candidate sufficiently younger to permit an inference of age discrimination." Sisler, 723 A.2d at 956 (citation omitted). However, in a later decision, the Appellate Division found that under the LAD "the focal question is not necessarily how old or young the claimant or his replacement was, but rather whether the claimant's age, in any significant way, made a difference in the treatment he was accorded by his employer." Petrusky v. Maxfli Dunlop Sports Corp., 775 A.2d 723, 726 (N.J. Super. Ct. App. Div. 2001). Furthermore the Third Circuit has stated that "the fourth element of the McDonnell Douglas test could be satisfied by proof of either replacement

by someone outside the protected class or by someone younger or *by other proof that the discharge was because of age*." Maxfield v. Sinclair Int'l, 766 F.2d 788, 792 (3d Cir. 1985) (emphasis added) (citations omitted).  The Petrusky court cited this passage from Maxfield in support of its conclusion that a prima facie age discrimination claim under the LAD does not necessarily depend upon the age of the person replacing the plaintiff, or in this instance, the person promoted over him. See Petrusky, 775 A.2d at 726; but see Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 301 (3d. Cir. 2004) (declining to apply the Petrusky interpretation of Sisler).  Therefore, although there is some uncertainty as to whether it is necessary or dispositive for Palatnik to show that younger persons were promoted instead of him, the fact that younger persons were promoted may at least constitute some evidence that the plaintiff's age was a factor in the treatment accorded him by the employer.

### i. Prima Facie Claim for Store HRM Promotions

With respect to the Store HRM promotions at issue, Home Depot argues that Palatnik fails to satisfy the second and fourth elements of a prima facie claim for age discrimination.[7] First, Home Depot points out that of the 33 individuals who were selected for Store HRM positions in New Jersey during the relevant time period, only 7 of them held those positions at stores within 30 miles of Cherry Hill. (Def. Mem. at 9-11, 18.)  Therefore, Home Depot argues that the other 26 promoted individuals were not in the same "promotional stream" as Palatnik because, according to Palatnik's deposition testimony, he would only consider positions that were available within 30 miles of his home when he relocated to Cherry Hill. (See Def. Facts ¶

---

[7] It is undisputed that Palatnik can satisfy the first and third prongs of a prima facie claim of age discrimination.  Because he was over forty at the time of the promotions, he was a member of a protected class under the LAD.  See Greenberg, 708 A.2d at 466.  Similarly, neither party disputes that Palatnik did not receive a promotion to Store HRM or ASM during his tenure at the Cherry Hill store.

32.)  Simply put, Palatnik fails to show that he was "similarly situated" with these 26 individuals because they were willing and able to accept positions more than 30 miles from Cherry Hill, whereas Palatnik was not. See Peper, 389 A.2d at 480.  In his opposition, Palatnik fails to even mention these promotions to Store HRM, much less present any evidence to refute Home Depot's argument that Palatnik was not in the same promotional stream as these 26 individuals. Because Palatnik has failed to articulate any specific facts suggesting that he was similarly situated to these 26 promoted individuals, the Court will not consider the 26 promotions as evidence of age discrimination against him.

Second, Home Depot argues that 5 of the 7 remaining individuals promoted to Store HRM were actually older than Palatnik. (See Def. Mem. at 18; Def. Facts ¶¶ 65, 68.)  Although it may be inaccurate for Home Depot to conclude that this fact alone precludes Palatnik's ability to state an age discrimination claim based on those five promotions, the plaintiff sets forth absolutely no evidence to show that Home Depot's decision not to promote Palatnik to these positions was somehow based upon his age. See Petrusky, 775 A.2d at 726.  In fact, Palatnik's opposition brief literally fails to mention any Store HRM promotions whatsoever.  Consequently, this Court will not consider these five promotions as evidence of age discrimination where (1) it is undisputed that the five promotions actually went to someone older than Palatnik, and (2) Palatnik has not otherwise shown that "age in any significant way made a difference" as to Home Depot's decision not to promote him.

Third, Home Depot highlights that the 2 remaining individuals selected for Store HRM positions within 30 miles of Cherry Hill were both more qualified for a Human Resources position than Palatnik.  These two individuals, John Neveling and Jeannine Schultz, each had prior Human Resources experience as Associate Development Supervisors, whereas Palatnik did

not have any prior HR experience. (See Def. Facts ¶¶ 70-72.)   Therefore, Home Depot argues

that Neveling and Schultz cannot be considered as being in the same "job category" as Palatnik.

See Peper, 389 A.2d at 480.  In addition, Palatnik's scores on his interview and written test for

the Store HRM position were below the minimum level necessary to qualify him for the

promotion. (See Def. Facts ¶¶ 61-64.)  Again, Palatnik has failed even to address the allegations

regarding the superior qualifications of Neveling and Schultz, much less presented any evidence

that might create a genuine dispute of fact on the issue.  Therefore, the Court will not consider

these two promotions as evidence of discrimination because Palatnik has not demonstrated that

he was qualified for the position, nor that Neveling or Schultz held "similar or lesser"

qualifications than he did.[8] See Greenberg, 708 A.2d at 465; Esposito v. Twp. of Edison, 703

A.2d at  679.

　　　　Altogether, with respect to any claim for age discrimination based upon a failure to

promote Palatnik to Store HRM, Palatnik has failed to establish a prima facie claim.  As a result,

the Court will grant summary judgment in favor of Home Depot on plaintiff's age discrimination

claims for failure to promote him to Store HRM.

---

[8] The Court notes that in Erickson, the New Jersey Supreme Court found that the fourth prong of a reverse discrimination claim does not require the plaintiff to establish that the persons promoted held "similar or lesser" qualifications than the plaintiff. See 569 A.2d at 800-801. Although the Erickson holding specifically refers to reverse discrimination cases, it is not entirely clear whether this holding also applies in the context of a traditional discrimination case based upon a failure to promote.  In any event, even if the Erickson standard applies and Palatnik does not need to show similar or lesser qualifications as part of the prima facie case, Palatnik's age discrimination claim with respect to the promotions of Neveling and Schultz would fail at the third step of the McDonnell Douglas framework.  Because Palatnik has failed to present any argument or evidence to refute Home Depot's assertion that Neveling and Schultz were promoted because of their superior Human Resources experience and test scores, Palatnik has not shown that Home Depot's reasons for not promoting Palatnik were merely a pretext for discrimination. Therefore, his age discrimination claims with respect to the Store HRM positions must fail as a matter of law.

ii.  Prima Facie Claim for ASM Promotions

As mentioned above, there are 11 promotions to ASM that are at issue before the Court as possible instances of age discrimination against Palatnik. (See Discussion, supra Part III.B.) In arguing that Palatnik has not presented a prima facie case of age discrimination with respect to these promotions, Home Depot groups the 11 promotions to ASM into three categories: (1) the promotion of Andrew Collins, (2) the promotions of Frances Stephenson, Arnell Palmer, and William Thurman, and (3) the remaining seven promotions of Bonnie Brewer, Keith McCrary, Robert Rosner, John Watson, Drew Travia, Robert Streahle, and Danielle Bordi.  The Court will address these three groupings in turn.

With respect to Andrew Collins, Home Depot alleges that he was not in the same job category or promotional stream as Palatnik at the time of his promotion to ASM.  Collins was promoted to ASM in the Home Depot store in Absecon, New Jersey, which is approximately 60 miles from Palatnik's home in Cherry Hill. (See Def. Mem. at 19.)  In other words, Collins was not similarly situated to Palatnik because he was able to take the promotion in Absecon, whereas Palatnik testified that when he transferred to Cherry Hill, he was only interested in positions within 30 miles of his Cherry Hill home. (See Pl. Dep. at 67:22 to 68:10.)  In addition, because Collins worked a considerable distance from Cherry Hill, he was actually supervised by a different District Manager than Palatnik.  District Manager Laura Lamoree was responsible for promoting Collins in September 2002, and she has certified that at the time of the promotion, she did not even know of Palatnik because he worked outside of her district. (See Lamoree Cert. ¶ 7.) Therefore, Home Depot argues that Palatnik was not similarly situated with Collins because the two men worked in separate districts for different supervisors and were not considered for the same position.

Palatnik's opposition fails to address the issue of whether he was similarly situated and/or equally qualified for the promotion to ASM in the Absecon store.  However, part of Palatnik's burden of showing a prima facie case of age discrimination is to demonstrate that he was qualified for the position and that similarly situated individuals received the promotion over him. Greenberg, 708 A.2d at 460; see Warner v. Federal Express Corp., 174 F. Supp. 2d 215, 221 (D.N.J. 2001) (noting that plaintiff failed to satisfy fourth prong of age discrimination claim because he failed to show that he was replaced with similarly situated, younger employees). Because plaintiff has failed to present any facts refuting Home Depot's proofs that Palatnik and Collins were not similarly situated, the Court will not consider the Collins promotion as an instance of age discrimination.  Consequently, the Court will grant Home Depot's motion as to plaintiff's age discrimination claim relating to the promotion of Andrew Collins.

Regarding the Stevenson, Palmer and Thurman promotions, Home Depot argues that Palatnik was not qualified for those positions, because at the time of those promotions, Palatnik had self-imposed restrictions on his work schedule.  One of the minimum qualifications for the ASM position is that the employee must be able to work a fully flexible 55 hour work schedule, with no restrictions on availability. (See Markmann Cert. ¶ 8.)  However, from October 2002 until January 2003, Palatnik had a 90 day agreement with his Store Manager, Nicole Lomba, to work a limited work schedule. (Def. Facts ¶ 49.)  Because Palmer and Stephenson were promoted to ASM within that 90 day period, Home Depot argues that they were not similarly situated with Palatnik in terms of qualifications.  Similarly, from April 2004 to June 2004, Palatnik again requested and received accommodations to work a limited schedule. (Def. Facts ¶ 51.)  In May 2004, Thurman received his promotion to ASM. (Def. Facts ¶ 192.)  Therefore, the defendant alleges Palatnik was also not qualified or similarly situated with Thurman at the time

of his promotion.  In sum, Home Depot argues that Palatnik's self-imposed work restrictions meant that Palatnik did not meet the qualifications for an ASM position, and further, the restrictions took him out of the same "promotional stream" as Palmer, Stevenson, and Thurman.

Palatnik appears to make several arguments in support of its prima facie case of age discrimination with respect to the promotions of Stevenson, Palmer, and Thurman.  First, Palatnik states that he was willing to work a fully flexible schedule at the time of these three promotions because the JJP application Palatnik competed in March 2001 stated that he was willing to work a fully flexible 55 hour week. (Pl. Mem. at 4 .)  However, regardless of whether Palatnik said he could work flexible hours in March 2001 when he first applied for the transfer to Cherry Hill, it is undisputed that at the time of the Stevenson, Palmer, and Thurman promotions, Palatnik was not working a flexible schedule due to his own self-imposed restrictions.  In other words, Palatnik's 2001 JJP application does not change the fact that at the time of these promotions, Palatnik did not meet the qualifications for the ASM position because he had informed his superiors that he was unable, or at least unwilling, to work a fully flexible schedule. In his defense, Palatnik also asserts that such work restriction agreements were commonplace among Home Depot employees, but he fails to present any evidence whatsoever that Stevenson, Palmer, or Thurman had a similar arrangement to work restricted hours. (See Pl. Mem. at 4-5.) Without such evidence, Stevenson, Thurman, and Palmer appear qualified for the promotions they received, whereas Palatnik does not, because at the time of the promotions, Stevenson, Thurman and Palmer could and did work fully flexible schedules.

Second, Palatnik argues that information regarding Thurman and Stevenson in Michael Markmann's Certification should not be considered in deciding this motion because (1) it is "hearsay" and (2) there is no documentation attached to the certification relating to either

promotion. (Pl. Mem. at 7.)  However, it is undisputed that as District Manager for the Cherry Hill area, Markmann was ultimately responsible for making promotion decisions regarding ASM positions at the time Stevenson, Thurman, and Palmer were promoted.  Therefore, as an individual with personal knowledge regarding those three promotions, Markmann's sworn statements regarding (1) when he promoted Stevenson, Thurman, and Palmer and (2) their respective qualifications for the job are admissible evidence on a summary judgment motion. <u>See</u> Fed. R. Civ. P. 56(e).

Third, Palatnik argues that he was more qualified than Palmer for the ASM position Palmer received in November 2002. (<u>See</u> Pl. Mem. at 6-7.)  Palatnik states that Palmer was promoted to ASM after only four years experience, even though in the month prior to Palmer's promotion, he had been rated below Palatnik.  In addition, Palatnik alleges that Palmer's cumulative performance evaluations were lower than his.  However, even if these allegations are true, Palatnik still fails to establish that he met the qualifications for an ASM position at the time of Palmer's promotion in November 2002.  As mentioned above, those qualifications include working a fully flexible schedule without any restrictions on availability.  However, in November 2002, Palatnik needed to work a self-imposed restricted schedule whereby he had at least two, pre-determined days off per week. (<u>See</u> Def. Facts ¶¶ 48-49; Work Schedule Agreement attached to Brady Cert. at Exhibit L.) Therefore, regardless of Palatnik's performance reviews at the time of Palmer's promotion, he has still failed to establish his own qualifications as a prima facie element of an age discrimination claim.

Simply put, Palmer, Stevenson, and Thurman were promoted during the time periods when Palatnik was on self-imposed, restricted hours.  Therefore, Palatnik was unqualified for those promotions because at the time they became vacant he was not available to assume the time

demands the position required. See Williams v. R.H. Donnelly, Corp., 368 F.3d 123, 129 (2d Cir.

2004) (noting that to be qualified for a position, an employee must be available to fill the

position at the time it becomes vacant).  Without having established his qualifications, Palatnik

cannot make out a prima facie case for age discrimination based on those three promotions.  As a

result, the Court will grant Home Depot's motion for summary judgment with respect to these

three failure to promote claims.

Finally, as to the 7 remaining ASM promotions at issue,[9] Home Depot argues that

Palatnik cannot make out a prima facie case because he cannot show that these promotions were

given to individuals with similar or lesser qualifications.  See Warner, 174 F. Supp. 2d at 221;

Peper, 389 A.2d at 480; Greenberg, 708 A.2d at 465; Esposito, 703 A.2d at 679.  Home Depot

asserts that all seven individuals had "solid performance histories" and "were qualified for their

promotions." (Def. Mem. at 22.)  By contrast, Palatnik argues that he was more qualified or as

qualified as some of these younger associates who were promoted.  Palatnik contends that

several of the performance evaluations for these individuals showed ratings which were less than

those of Palatnik, yet the younger, less experienced associate was promoted while Palatnik was

not. (Pl. Mem. at 6.)

With respect to the promotions of John Watson and Robert Rosner, Palatnik fails to

establish that they held equal or lesser qualifications at the time of their promotions to ASM.

Watson received a rating of "5" on two performance reviews prior to his July 2002 promotion,

whereas Palatnik only received a rating of "4" on his August 2001 and February 2002 reviews.

(Def. Facts ¶¶ 142, 40, 41.)  Watson's August 2001 review also notes that he was "the best

---

[9] These seven promoted individuals are: Bonnie Brewer, Keith McCrary, Robert Rosner, John Watson, Drew Travia, Robert Streahle, and Danielle Bordi. (See Def. Mem. at 21-22.)

department head in the store and is ready for a promotion." (Def. Facts ¶ 143.) Similarly, Home Depot presents evidence that at the time of Rosner's promotion, he ran the "best-performing and maintained paint department" in the district. (Markmann Cert. ¶ 24.) Palatnik fails to present any evidence or argument regarding Watson's or Rosner's qualifications for the position of ASM, even though the fourth element of a prima facie age discrimination case seemingly requires a showing that the persons promoted were similarly situated and had equal or lesser qualifications. See Warner, 174 F. Supp. 2d at 221; Peper, 389 A.2d at 480; Greenberg, 708 A.2d at 465; Esposito, 703 A.2d at 679. In light of the evidence tending to show Watson's and Rosner's superior qualifications and plaintiff's failure to present any evidence to the contrary, this Court finds that Palatnik has failed to meet his burden of establishing a prima facie case with respect to the Watson and Rosner promotions.

As to Bordi, Palatnik deposed that he believed Bordi only received her promotion in July 2003 because she is a "black female." (See Pl. Dep. at 402:7 to 402:18.) Because Palatnik seemingly admitted that her promotion had nothing to do with age, Home Depot argues that his age discrimination claim with respect to Bordi's promotion should be denied. In addition, Home Depot submitted Bordi's performance evaluations which show that she performed better on her January 2003 review than Palatnik did on his review. (See Markmann Cert. ¶ 51.) Palatnik does not dispute these facts, but instead argues that her high score is evidence of pretext.[10] However, for purposes of establishing a prima facie case of age discrimination, Palatnik has failed to

_____

[10] Although the Court finds that Palatnik has failed to establish a prima facie case of age discrimination with respect to Bordi, Streahle, Travia, Watson, and Rosner, the Court will go on to analyze the next steps in the McDonnell Douglas framework and will alternatively grant Home Depot's motion on the grounds that Palatnik has failed to establish pretext at step three of the analysis. Therefore, even assuming Palatnik has presented a prima facie case with respect to these promotions, his claims must still fail because he has not demonstrated pretext under the third prong of the McDonnell Douglas analysis.

present evidence demonstrating that Bordi is not more qualified than him for the promotion she received.

Similarly, Streahle and Travia received higher performance evaluations than Palatnik in the reviews immediately preceding their promotions. (See Def. Mem. at 23-24.)  Although Palatnik presents arguments related to Streahle that pertain to the pretext inquiry under the third prong of McDonnell Douglas, Palatnik does not present evidence to refute the higher performance evaluations or otherwise show that Streahle and Travia had only equal or lesser qualifications than him.  As a result, Palatnik has failed to establish the fourth prong of a prima facie case of age discrimination based on the Streahle and Travia promotions.

With respect to the remaining  promotions of McCrary and Brewer, Palatnik presents evidence that may at least present a genuine issue of fact regarding the relative qualifications of McCrary and Brewer.  Palatnik notes that he had higher evaluation scores than both McCrary and Brewer in February 2002, yet they were still promoted over him that year. (Pl. Mem. at 6.) Palatnik did receive an overall higher score than McCrary, but he and Brewer both received scores of "4" on their winter 2002 reviews. (See Def. Facts ¶ 41; Markmann Cert. ¶¶ 16, 20.) Home Depot does not argue any specific facts to demonstrate that McCrary and Brewer had superior qualifications.  Rather, Home Depot asserts that McCrary and Brewer were not similarly situated with Palatnik because they did not work in the same store as Palatnik. (Def. Mem. at 22.) However, it appears that even if individuals work in separate stores, they may still work in the same job category or promotional stream within a particular region governed by the same District Manager. (See Markmann Cert. ¶¶ 3-5.)  Based on this evidence, it appears that McCrary and Brewer may have been similarly situated with Palatnik, and further, that Palatnik may have been at least equally as qualified for the positions McCrary and Brewer received.  Therefore, the Court

will move on to the next step in the McDonnell Douglas framework with respect to these two

promotions.

In total, of the 7 remaining promotions to ASM at issue, Palatnik has failed to make out a

prima facie case with respect to the Watson, Rosner, Bordi, Streahle, and Travia promotions.

Therefore, plaintiff's age discrimination claims based upon those five lost promotions must fail

as a matter of law.  However, because the burden on plaintiff at this stage is not onerous, and

because the Court must address the rest of the McDonnell Douglas test as to the McCrary and

Brewer promotions anyway, the Court will proceed with the McDonnell Douglas analysis as to

all of the remaining ASM promotions.  See Warner v. Fed. Express Corp., 174 F. Supp. 2d 215,

221 (D.N.J. 2001) (proceeding with McDonnell Douglas analysis even where plaintiff has failed

to make out prima facie case).

### iii.  Home Depot's Legitimate Reasons and Pretext

In the alternative, Home Depot argues that even if Palatnik has established a prima facie

case of age discrimination, he has not met his burden of showing that Home Depot's articulated

reasons for not promoting Palatnik were pretextual.  Assuming the plaintiff has made out a prima

facie case of age discrimination, the burden shifts to the employer to articulate legitimate, non-

discriminatory reasons for its decision not to promote. Sisler, 732 A.2d at 955; Reeves, 530 U.S.

at 142.  This does not require the defendant to "persuade the court that it was actually motivated

by the proffered reasons." Burdine, 450 U.S. at 254-55.  Rather, the defendant must merely "raise

a genuine issue of fact as to whether the defendant discriminated against the plaintiff." Id. at 255.

Here, Home Depot's articulated reason for not promoting Palatnik is that the promoted

individuals were "better qualified for the positions at issue." (Def. Mem. at 24.)

Once the employer articulates a legitimate reason for its employment action, the burden

shifts back to the plaintiff to demonstrate that the articulated reason was merely a pretext for a discriminatory motive. Sisler, 732 A.2d at 955.  To establish pretext, the plaintiff "must cast such serious doubt on the veracity of the employer's articulated legitimate reason as to allow a jury to reasonably conclude that the employer was motivated to act for the discriminatory reason alleged by plaintiff." Beatty v. Farmer, 840 A.2d 856, 861 (N.J. Super. Ct. App. Div. 2004) (citing Kelly v. Bally's Grand, Inc., 667 A.2d 355 (N.J. Super. Ct. App. Div. 1995)).  It is not sufficient for the plaintiff to show that Home Depot's reason was wrong or mistaken regarding who should have been promoted. Fuentes v. Perskie, 32 F.3d 759, 765 (3d. Cir. 1994).  In other words, absent some evidence of a discriminatory motive, the Court will not substitute its judgment for the employer's business judgment when making decisions regarding which employees to promote. See Ezold, 983 F.2d at 527; Pepe v. Rival Co., 85 F. Supp. 2d 349, 367 (D.N.J. 1999); Chou v. Rutgers State Univ., 662 A.2d 986, 994 (N.J. Super. Ct. App. Div. 1995).  To succeed in establishing pretext, the plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." Fuentes, 32 F.3d at 765 (citing Ezold, 983 F.2d at 531).

Palatnik sets forth several allegations which he believes establish that Home Depot's articulated reason was pretextual.  Generally, Palatnik makes a blanket assertion that he was more qualified than many of the younger individuals promoted instead of him. (Pl. Mem. at 6.) More specifically, Palatnik argues that  (1) in February 2002, plaintiff had higher evaluations than McCrary or Brewer, but they were promoted instead of him; (2) in September 2002, plaintiff and Streahle had the same overall ratings, but after Nicole Lomba allegedly directed Arnold Hatton to revise Palatnik's January 2003 evaluation downward, Streahle had a better January

review than Palatnik and was thus promoted to ASM; and (3) in January 2003, Bordi received a

high performance evaluation at the same time Hatton was allegedly told to downgrade Palatnik's

rating. (See Pl. Mem. at 6-7.)

However, these arguments fail to establish pretext.  As mentioned above, the pretext

inquiry is not about who, in reality, was more qualified for the promotion at issue.  Although

Palatnik has argued that he received satisfactory performance evaluations, Palatnik has not

shown that the promoted individuals did not likewise receive satisfactory performance

evaluations.[11]  In addition, Palatnik suggests that he had more years of experience than some of

the promoted individuals; however, the District Manager attested to the fact that length of service

is not even considered as a factor for promotion to ASM. (See Markmann Cert. ¶ 10).  Therefore,

Palatnik's allegations that he occasionally had higher evaluation scores or was somehow more

qualified than McCrary, Brewer, Streahle, or Bordi fail to establish that Home Depot's

articulated reason for promoting them was pretextual. See Ezold, 983 A.2d at 528.  In addition,

Palatnik has not presented any evidence that his District Manager in charge of promotions to

ASM positions held any discriminatory age animus. See Fuentes, 32 F.3d at 765.  In fact,

between January 2002 and November 2004, District Manager Markmann promoted four

individuals to ASM positions who were over 40 at the time of their promotions. (Def. Mem. at

27-28.)  Given this lack of any evidence demonstrating age animus, Palatnik's alleged dispute

over qualifications does not suffice to show that Home Depot's real reason for promoting others

was to discriminate against Palatnik because of his age.

Second, Palatnik's assertion that Nicole Lomba told his supervisors to downgrade his

---

[11]In fact, Palatnik appears to acknowledge that Streahle, Bordi, Brewer and Travia all
received overall performance ratings which were higher than Palatnik's on at least one review
leading up to their promotions. (See Chart attached to Pl. Mem. at Exhibit A.)

January 2003 evaluation is likewise insufficient to show a discriminatory motive.  As Store Manager, it is Lomba's job to review and discuss all performance reviews of Department Supervisors in the Cherry Hill store. (See Lomba Cert. ¶¶ 6, 8.)  Although Lomba has sworn that she never directed Arnold Hatton to downgrade Palatnik's January 2003 review, Palatnik insists that his rating was downgraded at Lomba's request without submitting any competent evidence of such a downgrade. (See Lomba Cert. ¶ 5 ; Pl. Mem. at 7.)  In any event, even if the evaluation rating was lowered, Palatnik has not shown any evidence that a downgrade in his January 2003 rating had anything to do with his age. See Fuentes, 32 F.3d at 765 (noting that the pretext inquiry pertains to whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent).

Because Palatnik's arguments regarding pretext do not suggest any age animus on the part of Home Depot, the Court finds that Palatnik has failed to meet his burden to show that the articulated reason set forth by Home Depot was merely a pretext for discriminatory intent. Therefore, even though the Court has already found that Palatnik failed to establish a prima facie case as to all ASM promotions except McCrary and Brewer, this Court will in the alternative grant Home Depot's motion for summary judgment as to all of Palatnik's age discrimination claims on the grounds that Palatnik has failed to demonstrate pretext under the third prong of the McDonnell Douglas framework.

### D.  Retaliation Claim under LAD

In addition to his age and gender discrimination claims, Palatnik also contends that he was subject to unlawful retaliation after he filed a complaint with the Division of Civil Rights ("DCR") on October 15, 2002.  The DCR Complaint alleged that Home Depot's failure to promote Palatnik to ASM or Store HRM in August 2002 was due to age and gender

discrimination.  The Complaint was served on Home Depot on February 13, 2003. (See Exhibit A attached to Markmann Supp. Cert. )

When analyzing a retaliation claim under the LAD, the Court employs the same three-step burden-shifting analysis that it uses to evaluate a discrimination claim.  Marrero v. Camden County Bd. of Social Services, 164 F. Supp. 2d 455, 473 (D.N.J. 2001); see McDonnell Douglas, 411 U.S. 792 (1973).  Under the first step of this framework, the plaintiff must establish a prima facie case of retaliation by showing that: (1) he or she engaged in protected conduct known to the employer; (2) thereafter the employer took an adverse employment action against the plaintiff; and (3) there was a causal link between the protected activity and the adverse employment action.  Shepherd v. Hunterdon Developmental Ctr.., 765 A.2d 217, 229-30 (N.J. Super. Ct. App. Div. 2001); Romano v. Brown & Williamson Tobacco Corp., 665 A.2d 1139, 1142 (N.J. Super. Ct. App. Div. 1995).  Once the plaintiff establishes the prima facie elements of retaliation, then the defendant must provide legitimate, non-retaliatory reasons for the employment decision.  Romano, 665 A.2d at 1142.  At that point, the plaintiff has to burden to present evidence of the employer's discriminatory motive to demonstrate that the legitimate reasons articulated by the employer were merely a pretext for discriminatory intent. Id.

In support of his prima facie case for retaliation, Palatnik alleges that (1) Store Manager Nicole Lomba was "sarcastic" "condescending," and "arrogant" during some of her "walks" of Palatnik's department; (2) Nicole Lomba ignored Palatnik during some of her "walks" of his department; and (3) Nicole Lomba allegedly told two of Palatnik's supervisors to downgrade Palatnik's performance evaluations for January 2003 and August 2003. (See Pl. Mem. at 7-8.) Palatnik alleges that these were unlawful, retaliatory acts in response to his filing a Complaint

with the DCR.[12]

By contrast, Home Depot's motion for summary judgment makes two primary arguments in response to Palatnik's retaliation claim. First, Home Depot argues that Palatnik has not shown that any of the alleged "retaliatory" acts is legally sufficient to constitute an "adverse employment action" under the LAD. Second, Home Depot asserts that plaintiff has failed to show a causal connection between his filing of the DCR Complaint and any of the allegedly retaliatory acts.

### 1. Adverse Employment Action

The LAD prohibits employers from taking reprisals or adverse actions against any employee for exercising his or her rights under the statute.[13] See N.J. Stat. Ann. § 10:5-12(d). However, the LAD does not provide an exhaustive list of what constitutes an actionable reprisal

---

[12] Home Depot identifies two additional grounds for retaliatory conduct that Palatnik apparently raised during discovery, but failed to argue in his opposition to the current motion for summary judgment. First, Home Depot states that Palatnik has alleged that in September 2002 he was questioned and/or reprimanded by his superiors for soliciting Home Depot employees to join an outside business venture. (See Def. Mem. at 31-32.) Palatnik not only fails to make this allegation in his brief, but even if he did, the questioning occurred before he filed his DCR Complaint in October 2002. Therefore, the questioning cannot be interpreted as an action in retaliation to the DCR Complaint. In addition, Home Depot suggests that Palatnik indicated that his failure to receive a discretionary lump sum bonus in February 2003 was evidence of retaliation. (See Def. Mem. at 33 n.13.) However, at the time he was denied the bonus, Palatnik was the highest paid department supervisor at the Cherry Hill Store. (Def. Facts ¶ 217.) Moreover, Palatnik not only fails to present this argument in his opposition, but he has also admitted that he has no evidence, other than his own belief, that he did not get the bonus because he filed a complaint with the DCR. (See Def. Facts ¶ 216.) Such mere speculation may not be used to manufacture a genuine issue of fact. See Pollack v. Am. Tel. & Tel. Long Lines, 794 F.2d 860, 864-65 (3d Cir. 1986). Therefore, plaintiff also has not alleged a valid retaliation claim based upon his failure to receive a lump sum, discretionary bonus in February 2003.

[13] It is undisputed that Palatnik's filing of a Complaint with the DCR is a protected activity under the LAD. See McBride v. Princeton Univ., Civ. No. 90-838, 1991 WL 66758, at *4 (D.N.J. Apr. 24, 1991). Therefore, the analysis must focus on the second and third prongs of a prima facie retaliation claim.

or adverse employment decision.  Although there are no bright line rules defining an adverse

employment action, New Jersey courts have noted that it is proper to look "for guidance to

federal law dealing with Title VII and Civil Rights legislation to determine what constitutes an

adverse employment decision in the context of an LAD retaliation claim." Mancini v. Twp. of

Teaneck, 794 A.2d 185, 207 (N.J. Super. Ct. App. Div. 2002).  Some factors for consideration

include whether the alleged retaliatory conduct resulted in the employee's "loss of status,

clouding of responsibilities, diminution in authority, disadvantageous transfers or assignments,

and toleration of harassment by other employees." Id. (citations omitted).

  In the Title VII context, the Third Circuit has found that retaliatory conduct is an adverse

employment action "only if it alters the employee's compensation, terms, conditions, or

privileges of employment, or deprives him or her of employment opportunities, or adversely

affects his or her status as an employee." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300

(3d Cir. 1997).  However, not every minor employment action that makes an employee

"unhappy" constitutes retaliatory conduct. Id.  An adverse action for purposes of Title VII refers

to a "significant change in employment status, such as hiring, firing, failing to promote,

reassignment or a decision causing a significant change in benefits." Weston v. Pennsylvania,

251 F.3d 420, 431 (3d Cir. 2001) (quoting Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 749

(1998)).

  Using these standards as guidelines, the Court finds that Palatnik's allegations regarding

Nicole Lomba's attitude during her walks of Palatnik's department do not rise to the level of an

adverse employment action.  Although Lomba's demeanor during her "walks" of Palatnik's

department may have been impolite, there is no indication that it resulted in a significant change

in Palatnik's employment status. See Weston, 251 F.3d at 431. Allegations of intense scrutiny,

overly critical supervision, unnecessary reprimands or derogatory comments do not constitute an adverse employment action. Buffa v. New Jersey State Dep't of Judiciary, 56 Fed. Appx. 571, 576 (3d Cir. 2003) (noting that "intense scrutiny" and "overly critical supervision" do not constitute an adverse employment action under the LAD); Robinson, 120 F.3d at 1301 (noting that "unsubstantiated oral reprimands" and "unnecessary derogatory comments" do not rise to the level of an adverse employment action required for a retaliation claim).  Likewise, accusations of occasionally being ignored by a supervisor are insufficient to constitute an adverse employment action, absent any indication that such silence affected the employee's job status. Magilton v. Tocco, 379 F. Supp. 2d 495, 507 (S.D.N.Y. 2005) (noting that being ignored does not rise to the level of an adverse employment action because employment laws are not a civility code meant to punish rude behavior).  Therefore, Lomba's silence and/or sarcastic, arrogant, and condescending tone of voice do not constitute an adverse employment action necessary to sustain Palatnik's retaliation claim.

Similarly, Palatnik's allegation that Nicole Lomba advised his supervisors to downgrade his January 2003 and August 2003 performance reviews does not rise to the level of an adverse employment action.  As a preliminary point, the Court notes that Palatnik has not submitted any competent evidence to establish that those review scores were actually lowered.  Indeed, contrary to Palatnik's unsupported accusations, Lomba's sworn certification indicates that she never advised Hatton or Lydamore[14] to downgrade Palatnik's scores on the January and August 2003 reviews. (Lomba Cert. ¶ 5.)  Similarly, Lydamore's sworn certification confirms that Lomba never directed him to lower Palatnik's score on the August 2003 review. (Lydamore Cert. ¶ 8.)

---

[14]Arnold Hatton and Charles Lydamore were Palatnik's supervisors at the time of his January 2003 and August 2003 reviews. (Def. Facts ¶¶ 43, 44.)  Hatton drafted the January 2003 review and Lydamore drafted the August 2003 review. (Def. Facts ¶¶ 43, 44.)

Rather, Lydamore states that Lomba merely suggested that he correct spelling and grammatical errors and add a more detailed game plan for Palatnik's performance issues. (Lyndmore Cert. ¶ 6.)  In other words, Lydamore's sworn certification as to what Lomba told him is in direct contradiction to Palatnik's hearsay allegations in his certification. (See Pl. Cert. ¶¶ 17, 19.)  In any event, even if Lomba directed the supervisors to lower Palatnik's reviews, there is no evidence that his job responsibilities, opportunities, privileges, or compensation changed because of those review scores, or that she threatened to fire him or pressed him to resign.  See Weston, 251 F.3d at 431; Robinson, 120 F.3d at 1300; Mancini, 794 A.2d at 207.  At best, these allegations establish a poor working relationship between Lomba and Palatnik, but that is insufficient to establish an adverse employment action. See Buffa, 56 Fed. Appx. at 576.

### 2.  Causal Connection

In the alternative, Home Depot argues that Palatnik also fails to establish a causal connection between the alleged retaliatory conduct and his protected activity of filing a Complaint with the DCR.  Plaintiff claims that his January 30, 2003 and August 7, 2003 performance reviews affected the terms of his employment.  However, Palatnik has not established any causal connection between those performance scores and Palatnik's filing of a DCR complaint.  First, the January 30, 2003 performance review was completed prior to Home Depot's receipt of Palatnik's DCR complaint, which was first mailed to Home Depot on February 19, 2003. (See Exhibit A attached to Markmann Supp. Cert.)  There is no evidence that Home Depot knew of Palatnik's DCR Complaint prior to that date.  Thus, there can be no causal connection when Home Depot was unaware of the protected activity at time the alleged adverse action was taken. See Robinson, 120 F.3d at 1301; Miller v. Yellow Freight Systems, Inc., 758 F. Supp. 1074, 1080 (W.D. Pa. 1991).  Second, as mentioned above, Palatnik has not presented any

evidence that the August 7, 2003 performance score was actually changed or that Lomba directed

Palatnik's supervisors to lower the rating.  According to the sworn affidavits of Lomba and

Lydamore, Lomba merely asked Lydamore to fix grammatical and spelling errors and provide a

clearer game plan. (See Lydamore Cert. ¶¶ 6, 8; Lomba Cert ¶ 5.)  Third, Palatnik has admitted

that Lomba was critical of him even before he filed the DCR complaint, and also that his

relationship with Lomba improved and became positive four months after Palatnik filed his DCR

complaint (which was before the August 7, 2003 performance review). (See Def. Mem. at 34.)

In other words, the fact that Lomba displayed the same negative attitude both before and after

Palatnik filed his DCR Complaint undermines Palatnik's allegation that his protected activity

caused Lomba's allegedly retaliatory attitude toward him.  Given these circumstances, Palatnik

has failed to demonstrate a causal connection between the filing of his DCR Complaint and any

of the allegedly adverse actions of his Store Manager, Nicole Lomba.

Overall, Palatnik has failed to establish two of the requisite elements of a valid retaliation

claim under the LAD.  Because he has not shown any adverse employment action or a causal

connection between his protected activity and Home Depot's allegedly retaliatory acts, the Court

will grant summary judgment in favor of Home Depot on plaintiff's statutory retaliation claim.[15]

---

[15] To the extent Palatnik contends that the alleged retaliatory conduct also created a
hostile work environment under the LAD, that claim is likewise without merit.  Home Depot
noted in it moving papers that the present motion for summary judgment pertains to all of
Palatnik's claims.  In his opposition, Palatnik points out that one of his claims is for hostile work
environment harassment under the LAD.  Therefore, in the reply, Home Depot argues that
Palatnik has not set forth any evidence of a hostile work environment, and the Court agrees.
    To succeed on a hostile work environment claim based on age animus, the plaintiff must
show: (1) the complained of conduct would not have occurred but for plaintiff's age; (2) the
conduct was severe or pervasive; (3) enough to make a reasonable older aged person believe that;
(4) the conditions of employment have been altered and the working environment is hostile or
abusive. Kelly v. Bally's Grand, Inc., 667 A.2d 355, 362 (N.J. Super. Ct. App. Div. 1995); see
Lehmann v. Toys 'R' Us, Inc., 626 A.2d 445 (N.J. 1993).  Here, as demonstrated above in the
analysis of plaintiff's discrimination claims, Palatnik has failed to show any connection between

**E.  Common Law Retaliation Claim**

Palatnik's Complaint also alleges a common law claim for unlawful retaliation. However, in the current motion, Home Depot argues that any common law retaliation claim is preempted by the LAD.  The Court agrees.

Both state and federal courts in New Jersey have found that the LAD preempts or precludes supplementary common law actions. See Butler v. Sherman, Silverstein & Kohl, P.C., 755 F. Supp. 1259 (D.N.J. 1990); Catalane v. Gilian Instrument Corp., 638 A.2d 1341 (N.J. Super. Ct. App. Div. 1994); Shaner v. Horizon Bancorp., 561 A.2d 1130, 1141 (N.J. 1989).  In Shaner, the New Jersey Supreme Court noted that "because the LAD provides a victim of age discrimination with a remedy, it might be unnecessary to recognize or create a Pierce-type [common law] action to vindicate substantially similar rights and provide similar relief."  Shaner, 561 A.2d at 1141.  After Shaner, the New Jersey legislature passed an amendment to the LAD which provided that all common law remedies would now be available to persons protected by the LAD. See N.J. Stat. Ann. § 10:5-3; Milazzo v. Exxon Corp., 580 A.2d 1107, 1107-08 (N.J. Super. Ct. Law. Div. 1990).  Shortly thereafter, in Butler, the district court found that "the Supreme Court does not intend to allow a supplementary common law cause of action where the NJLAD provides a remedy for the wrong.  Because there already exists a statutory remedy for plaintiff, it would be inappropriate for this court to extend New Jersey common law in this case."

_____

the alleged misconduct and Palatnik's age.  Moreover, Palatnik has not presented any evidence to establish the severity or pervasiveness of the alleged misconduct, nor that the misconduct altered his conditions of employment, nor that it created a hostile or abusive workplace. See Walton v. Mental Health Ass'n of Southeastern Pennsylvania, 168 F.3d 661, 667 (3d Cir. 1999) (noting that a poor or offensive work relationship with a superior does not automatically rise to the level of a "hostile" work environment).  Therefore, like the retaliation and discrimination claims, any hostile work environment claim based upon the same alleged misconduct, must fail as a matter of law.

<u>Butler</u>, 755 F. Supp. at 1265.  Years later, in <u>Catalane</u>, the Appellate Division affirmed the

finding in <u>Butler</u>, noting

> [W]e do agree with its conclusion that a supplementary cause of action may not
> go to the jury when a statutory remedy under the LAD exists.  Our Legislature has
> declared the remedies available under the LAD and would appear to have
> expressed the view that a common law claim for discrimination is unnecessary as
> the statute should be read broadly enough to encompass those claims and damages
> previously available at common law.

<u>Catalane</u>, 638 A.2d at 1349. Therefore, because the LAD provides a broad statutory remedy for

retaliatory conduct, the Court will grant summary judgment in favor of Home Depot on

Palatnik's common law claim for retaliation.

### F.  Punitive Damages

To recover punitive damages under the LAD, a plaintiff must show more than the

minimum conduct necessary to prove the underlying claim. <u>Weiss v. Parker Hannifan Corp.</u>, 747

F. Supp. 1118, 1135-36 (D.N.J. 1990); <u>Catalane</u>, 538 A.2d at 1354; <u>see</u> <u>DiGiovanni v. Pessel</u>,

260 A.2d 510, 511 (N.J. 1970).  In particular, the plaintiff must establish that (1) upper

management was an actual participant in the alleged wrongdoing or was willfully indifferent to

the alleged wrongdoing, and (2) that the alleged misconduct was especially egregious. <u>Rendine v.</u>

<u>Pantzer</u>, 661 A.2d 1202, 1215 (N.J. 1995).  To constitute especially egregious conduct, the

alleged misconduct must have been "wantonly reckless or malicious" and there must be "an

intentional wrongdoing in the sense of an evil-minded act or an act accompanied by a wanton

and willful disregard of the rights of another." <u>Nappe v. Anschelewitz, Barr, Ansell & Bonello</u>,

477 A.2d 1224, 1230 (N.J. 1984).

Moreover, where an employer makes a good faith effort to comply with anti-

discrimination laws, such efforts serve to insulate the employer from vicarious liability for

punitive damages. See Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 544-45 (1999); Bouton v. BMW of North America, Inc., 29 F.3d 103, 110 (3d Cir. 1994); Cavuoti v. New Jersey Transit Corp., 735 A.2d 548, 555-56 (N.J. 1999).

In the present case, Palatnik has failed to present any evidence suggesting that (1) Home Depot's upper management actually participated in or was willfully indifferent to the alleged misconduct by Nicole Lomba and/or Michael Markmann, or (2) that the alleged misconduct by Lomba and Markmann was "especially egregious." In fact, Palatnik's brief fails to even mention the punitive damages claim.

Additionally, Home Depot has presented evidence that it has relevant anti-discrimination policies in place, which were provided to Palatnik and reviewed with him during his orientation program. (Def. Facts ¶¶ 9-14.) In particular, Palatnik acknowledges receiving and reviewing a harassment policy, an equal employment provision prohibiting discrimination in the workplace, and an open door policy which outlines the procedure an employee may use to report complaints or problems without fear of retaliation. (Def. Facts ¶¶ 9-14, 17-18.) Therefore, it would be against the purposes behind the LAD to impose punitive damages on Home Depot when it has made good faith attempts to abide by the relevant anti-discrimination laws. See Kolstad, 527 U.S. at 544-45; Cavuoti, 735 A.2d at 555-56.

In any event, regardless of Home Depot's anti-discrimination policies, the foregoing analysis demonstrates that Palatnik has not provided evidence sufficient to establish any underlying liability, much less the exceptional showing required to justify a punitive damages award. As a result, the Court will grant Home Depot's motion for summary judgment on Palatnik's claim for punitive damages.

**IV.  CONCLUSION**

For the foregoing reasons, the Court will grant Home Depot's motion for summary

judgment.  The accompanying Order shall issue today.


Dated:  ___3-10-06_____          ___s/ Robert B. Kugler_____
                                                                        ROBERT B. KUGLER
                                                                        United States District Judge